You've introduced the court. My name is Christopher Warren. I represent Appellant Mr. Zana. I would ask to observe three minutes for your honor. At two. Three minutes. Three minutes. In this case, the Supreme Court has applied an incorrect standard in determining that obvious juror is conduct of illegal susceptible and did not result temporarily. I have repeatedly showed in the briefs that the state used the reasonable probability standard. And the U.S. Supreme Court and this court has repeatedly used the reasonable possibility standard. As I look at this case, it is obvious there doesn't seem to be a contention that juror misconduct occurred. Juror Thurman went out and did internet research, having done internet research over the weekend. He then came in Monday morning and, first of all, it's important to remember juror Thurman appeared to be favorable to the defense. Juror Thurman then comes in and has these discussions with other jurors. According to what I have cited in the record, these discussions occurred for 15 to 20 minutes. Some of the jurors marked him. That's a quote from the evidentiary hearing. That's what jurors said. Other jurors, testifying jurors, said that they were barking at each other. Some jurors said, boy, I sat on a California jury. The judge isn't going to be happy with this. Other jurors said you shouldn't have done this kind of investigation. Other jurors did not issue repeatedly. Within hours, he has changed his mind and now you have two hearings. This was so disturbing to one of the jurors that two weeks later she contacted Chambers and complained. Something happened. You should know about it. That's how Mr. Zeta became aware of these problems. An evidentiary hearing was had. It seems that the state's clear argument is that juror Thurman was absolutely ineffective in his Internet research. I don't have reason to disagree. I just disagree with the conclusion and analysis the state makes with that. The state seems to argue that Steve's so poor at his research that when he came in and faced the other 11 jurors, while he was discussing it, he wasn't influencing any of them. In fact, they were using his misconduct in an effort to show him he had violated the rules. Nobody complains to the court while this is happening. They just admonish him, bark at him, tell him he could be in trouble. All of those things changed his verdict. So they say, well, that's fine. The state says that's fine because it didn't influence anybody. My concern is this is so capable of repetition that jurors don't even need to leave the courtroom anymore. They can sit there. If the court advises on the definition of malice, I can clog my phone and look down. If I can't spell it correctly, I can look at it and say, well, that's not what malice says. Then I go tell the jurors I looked it up, and that's not what malice says. The reason we spelled it incorrectly. So this is now acceptable to do outside research. We have a discussion for 15 to 20 minutes along those lines. And that does not with a possibility affect the jury in this case, but it did. I think it's overblown in evidence that it affected his ability to be a fair and just jury. Mr. Zaghi had due process right to a fair jury, not just a jury where they were going to go around and do research as this particular individual did. I have cited extensively to several cases from this court and from U.S. Supreme Court, but what is of real concern to me is something that although I cited the case, I actually saw this in preparation for my argument today, and that is the state and the Nevada Supreme Court rely upon Meyer, the 2003 Meyer v. Statement of Nevada. And in it, I thought it was interesting because they conclude, as I have cited, that the standard for prejudice is shown whenever there is a reasonable probability or likelihood that the jury's conduct has put to the verdict. So they have the wrong standard, but they then put footnote number 22, and if you look at footnote number 22, it actually gets two standards, one from the 9th Circuit of this court that is the proper standard, reasonable possibility misconduct affected the verdict. Then, right after they do the same footnote, they cite State v. Smith, which is an Iowa case from 1997, saying reasonable probability misconduct affected the verdict. I don't know if they realized it, but they did the same footnote, and then adopt the reasonable probability standard, which is the cleaning surgery to clearly established federal law, as described by the U.S. Supreme Court in Fahy, which I have cited, which is the possibility. And I've addressed how, in a circumstance like this, we almost use the Chapman type standard, where can the government draw a reasonable doubt that it didn't affect the verdict. And as I look at this case, I'm not sure how anyone can say, on a reasonable doubt, or with a possibility that this verdict wasn't affected, how can juror Thurman Thiel, when he was being told by other jurors, the judge isn't going to be happy about this, why didn't you do other outside investigation, they're barking at him, they're admonishing him, and within hours, the verdict is guilty. Mr. Senator had a right to a fair jury, one where all the jurors were relying only upon what came in, and it's not outstanding internet research. Steve seems to point to the fact that this was an affordable research, this wasn't expensive research, but I think, as I point out in my brief, that we're changing, we're in a different era. We don't have to go to the library anymore to look up encyclopedia, to find answers to prove that the court is wrong. We can just look on our phones, and that's what happened here. He did internet research. Something should be done to let people know throughout our nation that you're not going to be able to just repeatedly mark a district court judge's order not to do outside research. Do it. Go and do that with the entire jury. And then be told, well, you weren't very good at it, so we're going to let that verdict stand. That, to me, seems to be the significant question. Counsel, is it the inquiry here whether or not the jury was affected? I mean, there was some indication that there was an influence on the verdict, but what's the evidence that you have that the jury was being teased by the outside research? What I would say, Your Honor, is that if you saw me, because there were 11 jurors who were affected, it was then that the juror exposed himself to ridicule, to the threat of, well, you can tell the judge, well, look what happened to you. That's the counsel office that came, and that is what I see as the problem. I see that New York City is working on the exact opposite. So, did he affect the other 11? Is the effect upon him? Did the juror react to these there impressions? And so the effect was he looked at the internet research, and he came back and he wasn't very good at convincing anybody, and they all went to speak to him. They mocked at him, they told him off, and, well, this was his chance to start dancing his moves. Thank you, counsel. Thank you for your time. Thank you very much. Good morning. You may please the court. My name is Vic Schutze. I'm a senior deputy attorney general. It is important to have the attorney general respond to this matter. There are actually three claims the jury has conducted before us, because it did not address the two that the Nevada Supreme Court, in its opinion, that appears at page 76 in the excerpts, handled with a footnote. That would be the hand in the pocket exercise, and the juror going to church was casting the age of girls in the congregation. The Nevada Supreme Court found that because those were within the realm of a common experience of jurors, those were not misconduct. Counsel's argument here today focuses on the third issue, which was, and I'm glad he emphasized it, the failed Internet research. I think Judge Rollison's question hits the nail on the head. What evidence was presented to the jury? What extraneous outside evidence was presented to the jury as a result of the research? And the answer is nothing, because this was a research was an attempt to find a child pornography website. He couldn't find the website. He said on page 526 in the excerpts, I couldn't find anything, and I'm paraphrasing, I couldn't find the website that was mentioned in trial. So, again, the extraneous information that's alleged to be the primary source of the jury's conduct in this case amounted to nothing under any standard. The deferential standard that we're here today applying, under the EDMA standard, 20 U.S.C. 2250-14, or even under a de novo standard, there is nothing here. This is an innocuous claim, because there was nothing before the court under any standard. There cannot be any prejudice in this case. Counsel, what's your response to your opposing counsel? Disapproval for his distinguishing admirer. The district court below, starting at U.R. 1, engaged in a lengthy, detailed analysis. The question here is, we need to cite, Mr. Zander needs to cite to a U.S. Supreme Court decision directly on point in the holding of that case. He's supposed to detect that the Nevada Supreme Court decision violated it, and there is no U.S. Supreme Court decision directly on point. The closest case we have is Turner v. Louisiana, cited by Mr. Zander, where the U.S. Supreme Court held that there is a general right, and I have no, absolutely nothing against this case, that a criminal defendant has the right to be acquitted or convicted on the evidence adduced in the courtroom. But the U.S. Supreme Court also held in Williams v. Taylor in the Harrington decision that when a state court is applying a broad general rule, and according to Zander, Turner v. Louisiana is the controlling case here. When the U.S. Supreme Court, I'm sorry, when a state court is applying a broad general rule, the state courts have that much more leeway in applying the case, and the question here is whether or not no reasonable jurist could agree with the decision of the Nevada Supreme Court. Excuse me, counsel, this is an odd case in a sense. We don't, you know, certainly Judge Rawlings was a district judge in her previous life, and, of course, the name of a district judge, so we see these things. And normally what one sees in these kinds of misconduct cases is, let's say, there's a certain fact, and a jury that goes home and goes on the internet and finds something to disprove that fact, and goes back in the jury room and says, did you know what the defendant testified? And so and so. I found out that, as a matter of fact, when I went on the internet, that couldn't be true. It was obviously lying. That is a clear-cut case of juror misconduct, no questions asked. But in this case, we've got a situation where, as I understand it, the juror was favorable to the defendant. He went out and he got some information, which would appear to be somewhat favorable. And if the counsel is arguing as to who presented that information, he was bullied by the other jurors and cowed into changing his vote. Am I misunderstanding this? That appears to be the argument, but I'm not convinced that the evidentiary hearing supports the alibi and supports the claim. The point I'm making is there was no infection of the jury when evidence that was obviously prejudicial to the defendant. It was not applicable to the internet. The counsel seems to disregard the fact that the evidence counts to garner extrinsic information failed. To me, yes, I am willing that that is the core of my argument. There was no internet information that made it in front of the jury because this juror couldn't find any. Now, I have to admit the argument that the juror was bullied is creative, but that's not the claim in the petition. That was before the district court. The claim was that the juror went out and got extrinsic information. The claim is changing here now that we're in the circuit court. Well, there was a secondary problem, which is the bullying argument. That's not the claim. That was before the U.S. District Court. In the petition's writ of habeas corpus, that was filed from 2009 to 2014. So I would hope we're not going to allow the claim to metamorphosize once we jump to the appellate court. The question in these three claims is whether or not extrinsic information made it to the jury. And the answer is no. Two of those claims dealt with common everyday life experiences, and we want jurors to have common life experiences. That's why we have a jury system. And if jurors coming in with common life experiences is vaguely of the jury system, well, that's what the founding fathers chose, and that's the system that we all support. That's why we don't have judges or machines or robots making those decisions. We want jurors with common sense-like experiences standing between people like me, prosecutors, and the defendant. It does vaguely of the system, and it's built into the system. But the fact that there was no success of this system, and again, I think Judge Rawlinson's question, it's the element under any standard you can come up with. And you can affirm in district court, based on anything in the record, there is absolutely no possibility of prejudice because no extrinsic evidence made it to the jury. In a nutshell, that's my argument. I can answer questions if you will. That would suggest I have not answered, as I generally do not, I did not respond to the uncertified question. I simply would note very briefly, with your permission, that the uncertified question is a Fourth Amendment issue, and Fourth Amendment issues are not recognized by the federal agencies. Thank you very much. Thank you. I have a follow-up. Well, I do address two issues that were just stated. There was nothing there, is what the prosecution is arguing, with regards to the outside Internet research. One thing I pointed out in the reply is two jurors in the evidentiary hearings said that whatever this non-evidence was, it was discussed for 15 to 20 minutes. One juror said 15 minutes, the other juror said 20 minutes. And so it made me wonder if nothing was found. What did they discuss for 15 to 20 minutes? Well, this used to be like the Grigsby argument is what was introduced. It was that somehow, by introducing it, the juror incurred the wrath of the fellow jurors and was thereafter possessed to change his vote to convict. And that's exactly my argument. And while I was listening to the prosecution, I thought, well, let's assume that a juror during deliberations who doesn't inject evidence-heavy activity into the jury room or does something to incur the wrath of their fellow jurors, they kind of say, you know, you've viewed the evidence. It's wacky, and it's sort of when the juror becomes intimidated and then changes their vote, do we prefer something you did in that situation? Well, for a number of reasons, but basically the big difference from your analogy is that if I don't have good eyesight, I'm a juror, and I'm thinking, oh, you know, I don't believe I am in this, I'm not guilty, and they're all like, well, you're the vintage idiot. That still gives me the right to even call names. My vote is guilty or my vote is not guilty. It's different here because what these jurors are saying, and I put this in the opening brief extensively, is they're saying, one juror's going to, you know, a couple of California juries, the judge is not going to be happy about this. It's the threat that I'm going to be in trouble. So now not only have I got a position that's different from the other 11, but now I'm under the threat that I'm in trouble, and I committed misconduct, which everybody agrees, he's committed misconduct, the state agrees. So isn't that the big difference, Judge Ezra, from what your analogy is, is that if I could stand up to you and ten other jurors, what you're saying, I just don't look at the evidence correctly, but when you say you did outside research, now you're in trouble. Now all of a sudden I'm thinking, you know what, I just want to go home to my family and do it, okay? And that's the big difference. That's what happened. That's what changed here, and that's what I've been bitterly complaining about. And then the standard, the crime standard, which you noticed the state could not answer, when it was asked up here, what's the problem with Meyer and the E, the law standards couldn't answer the question, is there a possibility that that did not affect the verdict, that that did not put that juror in a position where they thought, I better just back off this right now, and isn't that a problem? I am complaining of the verdict. It came shortly after he had revealed that he had committed this misconduct. All right, thank you, counsel. You've exceeded your time. Thank you to both counsels. The case is argued, submitted, court is adjourned by the court.
judges: O'scannlain, Rawlinson, Ezra